IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| MARY ANN NEAL | § | |
| | § | |
| V. | § | A-14-CV-906-AWA |
| | § | |
| CAROLYN W. COLVIN, ACTING | § | |
| COMMISSIONER OF THE SOCIAL | § | |
| SECURITY ADMINISTRATION | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff Mary Ann Neal's Complaint seeking reversal of a final decision of the Social Security Administration (Dkt. No. 4); Plaintiff's Social Security Brief (Dkt. No. 16) and Defendant's Brief in Support of the Commissioner's Decision (Dkt. No. 17). Also before the Court is the Social Security record filed in this case (Cited as "Tr.").

### I.  GENERAL BACKGROUND

Plaintiff Mary Ann Neal ("Neal") filed applications for disability insurance benefits ("DIB") and supplemental security income benefits ("SSI") under Titles II and XVI, respectively, of the Social Security Act ("Act"), 42 U.S.C.§§ 423(d), 1382c, on October 24, 2011. Tr. 118-21, 122-27. The Commissioner denied Neal's application at the initial and reconsideration levels. Tr. 46-49. After Neal filed a written request for a hearing, one was held on February 21, 2013, before an Administrative Law Judge ("ALJ"). Tr. 29-45. On May 23, 2013, the ALJ issued his final decision denying Neal's applications for both DIB and SSI. Tr. 10-28. After the Appeals Council declined to review Neal's case on August 5, 2014, the ALJ's decision became the final administrative decision of the Commissioner for purposes of the Court's review pursuant to 42 U.S.C. § 405(g). Tr. 1-6. Neal filed the instant lawsuit on October 9, 2014, requesting that the Court reverse or remand the ALJ's decision denying her benefits. Dkt. No. 4 at 2-3.

## II.  STANDARD OF REVIEW

The Social Security Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine if a claimant is able to engage in "substantial gainful activity" (and therefore if he is disabled) the Social Security Commissioner uses a five-step analysis:

1. A claimant who is working, engaging in a substantial gainful activity, will not be found to be disabled no matter what the medical findings are;

2. A claimant will not be found to be disabled unless he has a "severe impairment;"

3. A claimant whose impairment meets or is equivalent to an impairment listed in Appendix 1 of the regulations will be considered disabled without the need to consider vocational factors;

4. A claimant who is capable of performing work that he has done in the past must be found "not disabled"; and

5. If the claimant is unable to perform his previous work as a result of his impairment, then factors such as his age, education, past work experience, and residual functional capacity must be considered to determine whether he can do other work.

*Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994); 20 C.F.R. § 404.1520.  A finding of disability or no disability at any step is conclusive and terminates the analysis. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994), *cert. denied*, 514 U.S. 1120 (1995).  The claimant has the burden of proof for the first four steps; at step five, the burden initially shifts to the Commissioner to identify other work the applicant is capable of performing.  *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990). Then, if the Commissioner "fulfills [his] burden of pointing out potential alternative employment, the burden . . . shifts back to the claimant to prove that he is unable to perform the alternate work." *Id.* (citation omitted).

2

Judicial review of the Commissioner's final decision under the Social Security Act, 42 U.S.C. § 405(g), is limited to two inquiries: (1) whether substantial evidence supports the Commissioner's decision, and (2) whether the Commissioner correctly applied the relevant legal standards. *Kinash v. Callahan*, 129 F.3d 736, 738 (5th Cir. 1997). Substantial evidence is more than a scintilla of evidence but less than a preponderance–in other words, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995). The Court considers four elements of proof when determining whether there is substantial evidence of a disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *Id.* at 174. However, the Court cannot reconsider the evidence, but may only scrutinize the record to determine whether it contains substantial evidence to support the Commissioner's decision. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). In other words, the Court may not "reweigh the evidence in the record, nor try the issues *de novo*, nor substitute [its] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision." *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988) (per curiam). If the Court finds substantial evidence to support the decision, the Court must uphold the decision. *See Selders*, 914 F.2d at 617 ("If the . . . findings are supported by substantial evidence, they are conclusive and must be affirmed."); 42 U.S.C. § 405(g).

### III. FINDINGS OF THE ADMINISTRATIVE LAW JUDGE

After considering all of the evidence before him, the ALJ determined that Neal had the following severe impairments: Diabetes Mellitus, Hypertension, Hepatitis, and Organic Mental Disorder. Tr. 15. The ALJ decided that Neal's impairments neither individually nor in combination

met or medically equaled any of the listed impairments under 20 C.F.R. § 404. Tr. 15-16. The ALJ concluded that Neal had the residual functional capacity ("RFC") to:

> perform less than the full range of light work as defined in 20 CFR [§] 404.1567(b) in that she can lift/carry up to 20 pounds occasionally and up to 10 pounds frequently; stand and/or walk and/or sit up for 6 hours of an 8-hour workday except that she is limited to simple routine tasks with no more than occasional contact with the general public.

Tr. 17. The ALJ found that with this RFC Neal could not perform her past relevant work, which included work as a grill cook, housekeeper, and assembly line worker. Tr. 22, 155. Nonetheless, the ALJ determined that there are jobs in the national economy that she could perform. Tr. 23. The ALJ based his finding on the testimony of a vocational expert (VE). As the ALJ described it in his decision,

> The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative occupations such as Sorter (DOT[1] 222.687-014), of which there are 21,000 jobs in Texas and 217,000 in the national economy; Electronics Worker (DOT 726.687-010) of which there are 5,000 jobs in Texas and 311,000 in the national economy nationally; and Garment Bagger (DOT 920.687-018) of which there are 12,000 jobs in Texas and 300,000 in the national economy.

Tr. 22-23; 43. Consequently, the ALJ concluded that Neal was not disabled as defined by the Social Security Act and denied Neal's application for DIB under Sections 216(i) and 223(d), and SSI payments under Section 1613(a)(3)(A) of the Social Security Act. Tr. 24.

### IV. ANALYSIS

Neal contends that the Commissioner's denial of disability benefits was based on legal error and lacked the support of substantial evidence. Dkt. No. 4 at 2. Neal attacks the ALJ's process in four ways. *Id*. First, she contends the ALJ failed to apply the correct legal standard in analyzing the

---

[1]"DOT" refers to the Dictionary of Occupational Titles.

"severity" of Neal's vision problems at step two of the sequential evaluation process set forth in the regulations. Dkt. No. 16 at 2, 3. Second, she alleges the ALJ failed to evaluate the medical opinions in Neal's case pursuant to agency regulations and Fifth Circuit precedent because the ALJ (1) discounted the opinion of Dr. David Grant, a non-treating examining specialist, and (2) gave the greatest weight to a medical opinion that was based on evidence not in the record. Dkt. No. 16 at 2. Third, she asserts the ALJ did not factor all of Neal's claimed impairments into his RFC finding. Finally, she argues that the ALJ's hypothetical question to the VE did not accurately describe all of her individual impairments and limitations. *Id.* at 2-4.

After a careful review of the record, the Court concludes that the ALJ followed the correct legal standard, his decision was supported by substantial evidence, and the four grounds of error raised do not have merit.

**A.     ALJ*'s* Failure to Address Neal's Claims of Impaired Vision**

Pursuant to the Commissioner's regulations, a severe impairment is "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). An impairment is severe unless "it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work." *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985). Additionally, the determination of severity may not be "made without regard to the individual's ability to perform substantial gainful activity." *Id*. at 1104. To ensure that the regulatory standard for severity does not limit a claimant's rights, the Fifth Circuit held in *Stone* that it will assume that the "ALJ and Appeals Council have applied an incorrect standard to the severity requirement unless the correct standard is set forth by reference to this opinion or another of the same effect, or by an

express statement that the construction we give 20 C.F.R. § 404.1520(c) (1984) is used." *Id*. at 1106; accord *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000); *Eisenbach v. Apfel*, 2001 WL 1041806, at *6 (N.D.Tex. Aug. 29, 2001) (Boyle, J.). Even then, the Court must look beyond the use of "magic words" and determine whether the ALJ applied the correct severity standard. *Hampton v. Bowen*, 785 F.2d 1308, 1311 (5th Cir.1986). Unless the correct standard of severity is used, the case must be remanded to the Secretary for reconsideration. *Stone*, 752 F.2d at 1106.

Neal claims that the ALJ, "altogether fail[ed] to employ [the *Stone*] standard with respect to Neal's medically established vision impairment." Dkt. No. 16 at 5; *Stone v. Heckler*, 752 F.2d at 1104–05. Neal further claims that "[t]he ALJ's passing reference to *Stone* in the boilerplate, without any further analysis or related RFC findings, is contrary to Fifth Circuit standard and is grounds for reversal." *Id*. at 5-6.  The Court disagrees.  The ALJ properly mentioned the standard for analyzing severe impairments under *Stone*: that "an impairment or combination of impairments is 'not severe' when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work irrespective of age, education, and work experience."  Tr. 14. This is sufficient to overcome any assumption that the ALJ applied the wrong standard.  *Stone,* 752 F.2d at 1106.

Having found that the ALJ identified the correct standard, the Court must still determine whether the ALJ actually *applied* that standard, and whether his findings are supported by substantial evidence.  *Id*; *see also Hampton,* 785 F.2d at 1308.  While the ALJ did not detail which evidence from the record contributed to his step two severity analysis, he noted Neal's vision troubles in his discussion of her RFC at step four.  Specifically, the ALJ noted that Neal was examined for vision

problems at her consultative examinations with Dr. Kelley Davis[2], examining osteopathic specialist, on January 14, 2011 and with Dr. Lynn Bourdon, a non-treating examining physician, on January 10, 2012. Tr. 18-19. Dr. Davis found that Neal's vision was "uncorrected OD and OS 20/70 and OU 20/50," while Dr. Bourdon found her "right eye vision was 20/100, left eye 20/70, and both eyes 20/100." Tr. 220, 238. Also in the record, but not cited by the ALJ, is the opinion of one non-examining State agency medical expert consultant, Dr. Amita Hedge, who marked "no visual limitations" in Neal's RFC form, and recorded Neal's vision as "RE is 20/100, LE is 20/70." Tr. 249, 253. These scores measured Neal's "uncorrected" vision. Social Security regulations hold that a person is legally blind when their vision is "20/200 or less in the better eye *with* the use of a correcting lens." 20 C.F.R. § 416.981 (emphasis added). Rather than being a severe impairment, the evidence indicates Neal's vision could easily be corrected with glasses. Thus, while the ALJ made no explicit conclusion regarding the severity of Neal's vision problems, it is clear that the ALJ properly applied the "severity" standard laid out in *Stone*. Accordingly, the ALJ's finding at step two was reached by a proper application of the legal standards and is supported by substantial evidence.

## B.     Dr. Grant's Opinion

Neal next claims that the ALJ improperly discounted the opinion of one of her doctors, Dr. David Grant. Specifically, she argues that the ALJ erred by failing to consider the factors set forth in 20 C.F.R. § 404.1527, and ignored the medical evidence that supported Dr. Grant's findings. She is mistaken. When an ALJ determines that a treating doctor's opinion is not entitled to controlling weight, he must first consider certain factors laid out in 20 C.F.R. 404.1527(c). *Newton v. Apfel*, 209

---

[2] While the ALJ refers to this doctor as "Dr. Davis Kelly," (*see, e.g.,* Tr. 18) the record indicates that his or her name is "Dr. Kelley Davis." Tr. 219.

F.3d at 456 (5th Cir. 2000) (citing 20 C.F.R. § 404.1527(d)(2)) (*emphasis added*). A "[t]reating source means your own physician . . . who provides you . . . with medical treatment or evaluation and who has, or has had, an *ongoing* treatment relationship with you." 20 C.F.R. § 416.902 (*emphasis added*). The record shows that Dr. Grant only saw Neal one time. Tr. 240-45. There was no ongoing treatment relationship between Dr. Grant and Neal. Therefore, Dr. Grant was not a treating source for Neal and the ALJ was not required to consider the six factors set forth in 20 C.F.R. 404.1527(c) before declining to give his opinion controlling weight. Moreover, an ALJ may assign little or no weight to any physician's opinion that is unsupported by or inconsistent with the objective medical evidence. *Newton*, 209 F.3d at 455-56. The ALJ as fact finder has the sole responsibility for weighing the evidence and may choose whichever physician's diagnosis is most supported by the record. *Muse v. Sullivan*, 925 F.2d 785 (5th Cir. 1991) (citing *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir.1987).). The Court must limit its review to determine only whether or not the ALJ's findings were supported by substantial evidence regardless of what a preponderance of the evidence might suggest. *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988).

      Neal claims in her brief that the ALJ's decision did not "explain why the opinion [of the treating physician Dr. Grant] was not adopted [nor] contain specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record." Dkt. No. 16 at 10. This is not accurate. First, the ALJ stated that because Dr. Grant's medical opinion was based on a single examination of Neal, his opinion had "less probative value." Tr. 22. Second, the ALJ found Dr. Grant's opinion unreliable and unpersuasive because, he said, "the basis for Dr. Grant's medical diagnosis and opinions with respect to limitations are the result of subjective evidence and the claimant's representations." *Id*. The record shows that Neal only mentioned mental health issues

in two consultative examinations. Tr. 237-45. On December 2, 2010, Neal denied having psychiatric issues to her treating physician at the East Border Clinic and her psychiatric exam was within normal limits. Tr. 196. Dr. Davis's examination of Neal did not suggest any mental health issues. Tr. 219-21. Even after Neal claimed mental issues at her examination with Dr. Grant in April of 2012 (Tr. 237-39, 241-45) she failed to mention any mental health issues to her other doctors. Tr. 274-275. The record does not contain any evidence of actual treatment for Neal's alleged mental health issues, and there are no other claims of mental health issues by Neal in her record.  Accordingly, the record provides substantial evidence to support the ALJ's decision and the Court's finding today that the ALJ did not err when he determined that Dr. Grant's opinion concerning Neal's mental disability should be afforded little weight.

### C.    Dr. Miller's Opinion

Next, Neal objects to the ALJ assigning significant weight to the opinion of Dr. Cate Miller, a non-examining State agency medical expert consultant, while only giving "some weight, but not controlling weight" to Dr. Grant's opinion.  Tr. 22.  State agency medical experts are qualified doctors who are also experts in Social Security disability evaluation, and the ALJ must consider their findings and opinions. 20 C.F.R. §§ 404.1527(e)(2)(i); 416.927(e)(2)(i).  Social Security regulations state that ALJs should evaluate these opinions in light of several factors,

> such as the consultant's medical specialty and expertise in our rules, the supporting evidence in the case record, supporting explanations the medical or psychological consultant provides, and any other factors relevant to the weighing of the opinions. Unless a treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician, psychologist, or other medical specialist, as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for us.

20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i).  Neal claims the ALJ's reliance on Dr. Miller's opinion is unsupportable because the ALJ offered no rationale in support of his choice.  This is not the case.  The ALJ stated that he "gives significant weight to the opinions of the State agency medical consultants" only after a lengthy discussion of all of the medical opinions of record.  Tr. 20-22.  This discussion, which stretches across nearly three pages, details which portions of Neal's medical history the ALJ found credible and which he did not. Taken as a whole, this discussion is sufficient to meet the ALJ's responsibility to "explain in the decision the weight given" to the various opinions in the record.

Nonetheless, Neal argues that Dr. Miller's opinion should be ignored, as she based it on evidence outside the record.  Specifically, Neal notes that Dr. Miller made mention of Neal's past applications for disability benefits in her report.  *See* Tr. 266. Dr. Miller noted that

> [Claimant] has applied twice before and has not alleged mental issues. [Claimant] went to IM CE and [Consulting Examining Physician] noted [claimant] to have memory problems. Mental then developed. . . . In PCP records in 2011, the claimant has not alleged memory problems. Last Visit 10/21/11 notes no cognitive or psych issues raised.

While Neal's previous applications are not in the record, there is evidence that Neal previously applied for benefits.  Namely, examining osteopathic specialist Dr. Davis's records indicate an application for disability. Tr. 219-21. Dr. Davis examined Neal on January 28, 2011. Tr. 219-21. Neal's current application for disability was filed October 21, 2011. Dr. Davis stated that she conducted the consultative examination for the disability determination service and that Neal alleged disability due to diabetes, high blood pressure, and vision problems. Tr. 219. Tr. 266. Dr. Miller then discussed what happened during Dr. Davis' examination of Neal. *Id.* Dr. Miller also summarized

the differences between Neal's initial consultative exam with Dr. Davis and her subsequent exam with Dr. Miller. Therefore, Dr. Miller based her opinion on evidence found in the record.

**D.      Limitations Factored Into Neal's RFC**

Finally, Neal contends that the ALJ failed to consider limitations imposed by her alleged vision and mental impairment in his RFC finding at step four of the sequential analysis. Dkt. No. 16 at 15.  RFC is an assessment of the most an individual can do despite the limitations that stem from her medically determinable impairments, including those that are not severe. *Acosta v. Astrue*, 2012 WL 1994985, at *17 (W.D.Tex. Mar. 2, 2012) (citing SSR 96–8p, 1996 WL 374184, at *2, *5). The responsibility for determining a claimant's RFC is reserved to the Commissioner, and at the hearing level that assessment is entrusted to the ALJ. 20 C.F.R. §§ 404.1527(e)(2), 404 .1546(c). RFC will be determined by "all the relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(3). The ALJ must consider all of the evidence in the record. *See Herrera v. Comm'r of Soc. Sec.*, 406 Fed. Appx. 899, 904 (5th Cir. 2010) (holding that an ALJ properly factored claimed mental impairments into RFC when ALJ considered all evidence in the record and that decision is supported by substantial evidence).

It is a well settled in this circuit that "in making a determination as to disability, the ALJ must analyze both the 'disabling effect of each of the claimant's ailments' and the 'combined effect of all of these impairments.'" *Loza v. Apfel,* 219 F.3d at 399 (citing *Fraga v. Bowen*, 810 F.2d 1296, 1305 (5th Cir. 1987)).  An ALJ fails to consider the combined effects of impairments when he or she "devoted no discussion and made no fact finding as to disability indicated as arising from the interaction or cumulation of even those medical problems whose existence he acknowledged or did not rule out." *Id.* at 399 (citing *Strickland v. Harris*, 615 F.2d 1103, 1110 (5th Cir. 1980)).  In *Owens*

*v. Heckler,* the Fifth Circuit held that a specific statement from the ALJ showing that the ALJ has considered the claimant's impairments "singly, or in combination" is sufficient to affirm the ALJ's decision when a review of the record shows substantial evidence to support the ALJ's decision. *Owens v. Heckler*, 770 F.2d 1276, 1282 (5th Cir. 1985). Language to this effect "is not simply a rote statement; [when] substantial evidence supports the ALJ's conclusion ." *Id.* at 1282 (holding that ALJ did not fail to consider cumulative effect of claimant's impairments where ALJ states specifically that the impairments, taken singly or in combination, did not meet or equal a listed impairment).

Here, the ALJ stated in his decision that he had reviewed all relevant symptoms and medical opinions in the record when he determined the RFC:

> [a]fter careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform less than light work . . . . [i]n making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. [§§ ] 404.1529 and 416.929. . . .

Tr. 17. The ALJ also discussed the limiting effect of Neal's claimed impairments and the extent to which they limit her ability to work:

> [a]fter careful consideration of the medical opinions of record, the undersigned finds that the claimant's medically determinable impairments can reasonably be expected to produce some of the alleged symptoms. However, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms, have been determined to diminish the capacity for basic work activities only to the extent to which they can reasonably be accepted as consistent with the objective medical and other evidence and the above residual functional capacity.

Tr. 20.  Moreover, as noted *supra.*, the ALJ discussed the results of vision tests performed by Drs. Davis and Bourdon. Tr. 18-22.   As none of Neal's doctors claimed that she had an uncorrectable

vision impairment, the ALJ's decision to not include such impairment in her RFC was supported by the evidencep—or the lack of evidence—in the record.

Neal's argument that the ALJ should have factored limitations caused by her mental state into her RFC is based largely on the opinion of Dr. Grant, which provided the strongest medical evidence to support Neal's claims of mental impairment. As noted, *supra.*, the ALJ's decision to give little weight to Dr. Grant's opinion was supported by substantial evidence. The ALJ stated that absent that opinion, Neal's

> allegations concerning her impairments and the impact on her ability to work are not entirely credible in light of the objective medical findings, the medical history and degree of medical treatment required, and the claimant's description of her activities of daily living. The description of the symptoms and limitations, which the claimant has provided throughout the record, has generally been unpersuasive.

Tr. 20. From these statements, it is clear that the ALJ considered the evidence in the record regarding Neal's claimed mental impairments. The Court finds that the ALJ properly considered the relevant evidence regarding Neal's mental impairments, and that substantial evidence supports his conclusions.

**E.     ALJ's Hypothetical Question to the Vocational Expert**

Finally, Neal contends that because the ALJ failed to give proper weight to her doctor's opinions regarding her vision and mental limitations, the hypothetical question he posed to the vocational expert ("VE") at the hearing did not accurately describe all of her impairments and limitations. However, an ALJ is not required to incorporate limitations into the hypothetical questions presented to the VE if the ALJ did not find the alleged limitations to be supported in the record. *Roberts v. Colvin*, 946 F. Supp. 2d 646, 662 (S.D. Tex. 2013) (citing *Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir.1988)) (holding that the hypothetical question posed to the VE must

reasonably incorporate only those disabilities recognized by the ALJ); *See also Gardner v. Massanari*, 264 F.3d 1140, 2001 WL 822457, *2 (5th Cir. June 18, 2001) ("The hypothetical question that an ALJ poses to a VE need only incorporate the disabilities that the ALJ recognizes."). The ALJ found that Neal had no mental or uncorrectable visual impairments. Tr. 16, 19-20. As noted, *supra.*, these findings were supported by substantial evidence. As such, the ALJ was not required to include these allegations in his hypothetical question to the VE, and has not committed any error.

## V. CONCLUSION

In summary, the Court finds that the ALJ applied the proper legal standards to Mary Ann Neal's case, and that his findings are supported by substantial evidence in the record. As such, Mary Ann Neal has failed to establish any grounds for relief. For the foregoing reasons, the undersigned **HEREBY AFFIRMS** the decision of the Commissioner of the Social Security Administration to deny disability insurance benefits to Mary Ann Neal.

SIGNED this 31st day of August, 2015.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE